1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

13

JAMES JOHNSON, individually and on
behalf of all others similarly situated,
PHIL CHEN, and FRED D. DAVOLI,

Plaintiffs,

v.

COSTCO WHOLESALE
CORPORATION, W. CRAIG JELINEK,
and RICHARD A. GALANTI,

Defendants.

C18-1611 TSZ

ORDER

14

15

16

17

18

19

20

THIS MATTER comes before the Court on the Motion of Defendants Costco

Wholesale Corporation ("Costco"), W. Craig Jelinek ("Jelinek"), and Richard A. Galanti

("Galanti") (collectively, "Defendants") to dismiss Plaintiffs' Second Amended

Complaint[1] for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),

docket no. 44.  Having reviewed all papers filed in support of and in opposition to the

motion, the Court enters the following order.

21

22

23

---

[1] Plaintiffs filed a Second Amended Complaint, docket no. 38, and a subsequent corrected version, docket no. 41.  Reference in this Order to the Second Amended Complaint refers to the corrected version at docket no. 41.

ORDER - 1

**Background**

By Order dated November 26, 2019, docket no. 37, the Court dismissed without prejudice Plaintiffs' Consolidated Amended Complaint alleging claims for securities fraud against Defendants.  In doing so, the Court found that the Plaintiffs' alleged false statements[2] were not actionable misrepresentations because the Plaintiffs had not alleged scienter for any of the alleged misrepresentations.  Order, docket no. 37 at 44.  The analysis and reasoning of the Court's Order is incorporated by reference and will not be repeated.  Because the parties are familiar with the facts and regulatory scheme that govern this case, they are not recited here in great detail.

Plaintiffs subsequently filed a Second Amended Complaint ("SAC")[3] that adds new allegations from some of the previously pled confidential witnesses[4] ("CWs") 1 and 6 as well as a new confidential witness, CW 8.[5]  The Second Amended Complaint realleges violations of the Securities Exchange Act of 1934 ("Exchange Act") and Rule

---

[2] The Consolidated Amended Complaint alleged six false and misleading statements. Consolidated Amended Complaint, docket no. 26.  Statements 1-4 as alleged in the Consolidated Amended Complaint relate to statements made in connection with Costco's June 6, 2018 10-Q.  Statements 5 and 6 were made in the Form 8-K, filed on October 4, 2018, and during the earnings call that same day.  Of those statements, only statements 1-3 are realleged in the Second Amended Complaint.  Plaintiffs do not reallege statements 4-6 in the Consolidated Amended Complaint.  Statement 4 was Defendants' statement in the June 6, 2018 10-Q that there were "no material changes" in the risk factors from the 2017 annual report and that Costco was "currently making" and would continue to make significant technology investments.  Consolidated Amended Complaint, docket no. 26 at ¶ 159.  Plaintiffs have abandoned any reliance on statements Defendants made in October 2018.

[3] Plaintiffs have now filed four complaints: the original Complaint (docket no. 1), the Consolidated Amended Complaint (docket no. 26), the Second Amended Complaint (docket no. 38), and the corrected Second Amended Complaint (docket no. 41).

[4] With the exception of the addition of CW 8, the CW numbering in the Consolidated Amended Complaint and the Second Amended Complaint is the same.

[5] The Court previously ascribed little to no weight to CWs 2, 3, and 4, finding that their testimony was vague, inconsistent, or that they did not work at Costco during the class period.  Order, docket no. 37 at 12-15, 20.  Plaintiffs have failed to cure those deficiencies in the Second Amended Complaint.

10b-5 against all Defendants and violations of Section 20(a) of the Exchange Act against the individual Defendants on behalf of themselves and a putative class of shareholders who acquired Costco stock during the period from June 7, 2018 to October 25, 2018 ("the class period") and were damaged (the putative class). SAC ¶¶ 20, 300. Plaintiffs now allege that the June 6, 2018 10-Q and Defendants Jelinek's and Galanti's accompanying certifications of that filing were false and misleading because they stated that the company had effective internal controls in place in the 2018 Fiscal Year. *Id.* at ¶¶ 241-47.

The parties acknowledge that the only issue for the Court to decide on the present Motion to Dismiss is whether Defendants' allegedly false and misleading statements in June 2018 assuring investors that Costco's internal controls were "effective" and that Costco was fully compliant with the Sarbanes-Oxley Act of 2002 ("SOX") were made with the requisite scienter. Defendants' Motion to Dismiss, docket no. 44 at 12-13; Plaintiffs' Opposition, docket no. 45 at 7. The Court therefore now turns to whether Plaintiffs' new allegations—either alone or holistically—support the requisite strong inference of scienter.

## A.   Alleged Failure to Remediate User Administration and Access Control Issues

In the Second Amended Complaint, Plaintiffs present one additional confidential witness, CW 8, who was employed by Costco as an architectural employee in the IT department throughout the Class Period and who worked 2-3 levels below the Chief Information Officer, ("CIO"). SAC ¶ 39. CW 8 alleges that, in 2014, Costco had a strategy on authentication and authorization that would have remediated user administration and access control issues. *Id.* at ¶ 182. That plan was approved by the

ORDER - 3

CIO, Paul Moulton, "and received by all the VPs and SVPs that were a part of the office of the CIO." *Id.* at ¶ 183. Plaintiffs allege that CIO Moulton reported directly to Defendant Galanti. *Id.* at ¶ 28. CW 8 alleges that Costco ultimately did not implement the recommended remediation plan because, according to one IT director, "there was no budget," "it was not a priority," and that "there were more important things to work on." *Id.* at ¶ 184. CW 8 alleges that if Costco had implemented the plan in 2014 (at an alleged cost of about $10 million), "the SOX findings would have come back clean."[6] *Id.*[7]

**B.  Alleged IT Risk Management Disbanded**

Plaintiffs also add new allegations from CW 1 that Defendants were "aware" that Costco's IT Risk Management department was disbanded in the middle of 2017. *Id.* at ¶¶ 13, 148. CW 8 contends that the IT Risk Management department "never settled on a specific framework." *Id.* at ¶ 150. CW 8 also contends that the IT Risk Management department disbanded because it was disorganized and not well managed. *Id.* Plaintiffs allege that Tim Bowersock, the VP of Information Security, knew that the IT Risk Management department had been disbanded and that the Board was making it a "mission" to cut headcount and costs in the IT department in 2018. *Id.* at ¶ 192. Defendant Jelinek was responsible for reviewing and approving the IT budget. *Id.* at ¶ 253 Plaintiffs allege that former employees stated that management viewed security and

---

[6] CW 8 also alleges the failure to implement a tool in 2015 that would have helped maintain Costco's internal controls related to user administration. SAC ¶ 185.

[7] Plaintiffs also add allegations from CWs 1 and 8 regarding the sufficiency of Costco's internal controls, generally. *See* SAC ¶¶ 164–66, 172-73. Because the Court already concluded that Plaintiffs adequately alleged that Costco's internal controls were insufficient (Order, docket no. 37 at 35), and because the parties agree that the only issue to be resolved on this Motion is scienter, the Court does not incorporate these new generalized allegations into the analysis of this Order.

1   internal controls as an "afterthought" or a "necessary evil." *Id.* Plaintiffs also add new

2   testimony from CW 6 that in early 2018, "there was a six-month period where the

3   department lacked a centralized team overseeing" the internal risk registry. *Id.* at ¶ 151.

4   **C.   Alleged Emails from Defendant Jelinek Regarding SOX Compliance**

5        Plaintiffs also add new allegations from unidentified former employees that in

6   early 2017, Defendant Jelinek sent a series of internal emails urging those at the company

7   to "button up" internal controls and prioritize SOX compliance issues but "gave up

8   despite knowledge of actual SOX compliance issues." *Id.* at ¶¶ 12, 159.

9   **D.   Other Allegations**

10        Plaintiffs also state a variety of general, non-specific allegations relating to "red

11   flags" in the company: (1) that Costco's e-commerce expansion put "additional strain" on

12   Costco's already underfunded and understaffed IT department (SAC ¶¶ 2, 7, 13, 57–58,

13   134, 269); (2) that Costco settled claims and was developing a system of internal controls

14   and procedures related to a variety of areas unrelated to a material weakness in internal

15   control over financial reporting including opioid prescriptions, embezzlement, and

16   product safety (*id.* at ¶¶ 10, 112–17, 261–63);[8] and (3) a lengthy description of the COSO

17   framework (*id.* at ¶¶ 83–94, 103–07).  Plaintiffs' attempt to describe these events as "red

18   flags" does not make it so.

19

20

21   _____

22   [8] Some of these allegations relate to events well outside the class period, and it is unclear how they bear
     on Defendants' state of mind as of June 2018.  For example, the Department of Justice settlement related
     to improperly filled prescriptions occurred on January 19, 2017.  SAC ¶ 113.  The embezzlement by a
     former employee occurred from 2011 to 2016.  *Id.* at ¶ 115.

23

1    <u>**Discussion**</u>

2        **A. Legal Standards**[9]

3           **i.   Motion to Dismiss**

4           Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not

5    provide detailed factual allegations, it must offer "more than labels and conclusions" and

6    contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl.*

7    *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than

8    mere speculation of a right to relief. *Id.* When a complaint fails to adequately state a

9    claim, such deficiency should be "exposed at the point of minimum expenditure of time

10   and money by the parties and the court." *Id.* at 558. A complaint may be lacking for one

11   of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a

12   cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th

13   Cir. 1984). In ruling on a motion to dismiss, the Court must assume the truth of the

14   plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v.*

15   *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is

16   whether the facts in the Second Amended Complaint sufficiently state a "plausible"

17   ground for relief. *Twombly*, 550 U.S. at 570. If the Court dismisses the Second

18

19

---

20   [9] Defendants request that the Court take judicial notice of Exhibits 2–7 to the Declaration of John C.
21   Roberts Jr. in Support of Motion to Dismiss Consolidated Amended Complaint, docket no. 28. These
     documents include selected SEC filings and guidance, and the Court previously found the documents
     incorporated by reference into the Consolidated Amended Complaint. Order, docket no. 37 at 26-27. The
22   Court again takes judicial notice of Exhibits 2-7. They are referenced in the Second Amended
     Complaint, are matters of public record, their authenticity is not in dispute, and Plaintiffs do not oppose
23   the request.

ORDER - 6

Amended Complaint or portions thereof, it must consider whether to grant leave to

amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

> **ii.   Pleading Standard Under the Securities Exchange Act of 1934 and the Private Securities Litigation Reform Act ("PSLRA")**

Section 10(b) of the Exchange Act makes it unlawful for any person to "use or

employ, in connection with the purchase or sale of any security . . . any manipulative or

deceptive device or contrivance[.]"  15 U.S.C. § 78j(b).  SEC Rule 10b–5 imposes

liability on any person who "make[s] any untrue statement of a material fact" or "omit[s]

to state a material fact necessary in order to make the statements made, in light of the

circumstances in which they were made, not misleading."  17 C.F.R. § 240.10b–5(b).

To state a Section 10(b) claim, a plaintiff must allege: (1) a material misstatement

or omission by the defendant; (2) scienter; (3) a connection between the material

misrepresentation and the purchase or sale of a security; (4) reliance upon the

misrepresentation or omission; (5) economic loss; and (6) loss causation.  *Halliburton*

*Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).

Under the PSLRA, Section 10(b) claims must be pled with particularity.  *In re*

*Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).  The PSLRA heightens

the particularity required but does not convert a motion to dismiss into a trial by papers.

*In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1260 (N.D. Cal. 2008); *see also*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (even in PSLRA

cases, courts must accept all factual allegations in the complaint as true).  Further, courts

are cautioned against allowing heightened pleading standards to make it "near

1    impossible" to state a fraud claim.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,

2    999 (9th Cir. 2018).

3        Scienter is the "mental state embracing intent to deceive, manipulate, or defraud."

4    *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  Under the PSLRA, the

5    complaint must plead a "strong inference" that defendants[10] acted intentionally or with

6    deliberate recklessness.  "Reckless conduct may be defined as a highly unreasonable

7    omission, involving not merely simple, or even inexcusable negligence, but an extreme

8    departure from the standards of ordinary care."  *S.E.C. v. Platforms Wireless Int'l Corp.*,

9    617 F.3d 1072, 1093 (9th Cir. 2010) (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d

10   1564, 1569 (9th Cir. 1990)).  "[D]eliberate recklessness" that "reflects some degree of

11   intentional or conscious misconduct" is necessary to plead scienter.  *WPP Luxembourg*

12   *Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1051 (9th Cir. 2011), *abrogated*

13   *on other grounds by Lorenzo v. SEC*, 139 S. Ct. 1094 (2019).  In determining whether a

14

15

16   [10] Plaintiffs contend that Costco's Chief Information Officer, Moulton, received a report recommending
     that Costco install a program to remediate user and access control issues.  Plaintiffs state that because
     Moulton received and approved the report but failed to correct the individual Defendants' alleged
     misrepresentations regarding a material weakness in internal controls, this Court should infer "corporate
17   scienter" on a collective scienter theory.  Plaintiffs' Opposition, docket no. 45 at 25.  Citing *In re
     Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 6041723, at *9 (N.D.
18   Cal. Dec. 6, 2017), Plaintiffs assert that scienter of a corporation may be pled by establishing the
     knowledge or deliberate recklessness of a corporate representative who either made the representation,
19   had some involvement with the statements, or could have corrected it.  Plaintiffs' Opposition, docket no.
     45 at 12-13.  Plaintiffs misstate the law of this circuit regarding collective scienter and the holding of *In re
20   Volkswagen*, in which the court found that while it is "possible" in theory to infer scienter on the basis of
     collective scienter, no Ninth Circuit court had ever apparently done so.  2017 WL 6041723, at *11.
     Moreover, the example that Ninth Circuit courts have cited as a hypothetical case in which collective
21   scienter may be appropriate because it "would have been approved by corporate officials sufficiently
     knowledgeable about the company to know that the announcement was false" is "General Motors
22   announc[ing] that it had sold one million SUVs in 2006, and the actual number was zero."  *Id.* at *10-11;
     *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 & n.13.  That example is completely inapposite to
23   the facts of this case.

1   defendant acted with scienter, a court considers "opposing inferences" and "plausible,

2   non-culpable explanations."  *Tellabs, Inc.*, 551 U.S. at 323-24.  A complaint survives

3   only if the culpable inference is "at least as compelling" as the nonculpable inference. *Id.*

4   at 324.

5         When analyzing the sufficiency of a plaintiff's scienter pleadings, a court must

6   "determine whether any of the allegations, standing alone, are sufficient to create a strong

7   inference of scienter."  *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089,

8   1095 (9th Cir. 2011).  If no individual allegation is sufficient, the Court conducts a

9   "'holistic' review of the same allegations to determine whether the insufficient

10   allegations combine to create a strong inference of intentional conduct or deliberate

11   recklessness."  *Id.* (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d at 991-92

12   (9th Cir. 2009)).

13         Failure to satisfy the PSLRA's heightened pleading standard requires dismissal of

14   the complaint.  15 U.S.C. § 78u-4(b)(3)(A).

15   **B.  Plaintiffs' Allegations in Support of Scienter**

16         Plaintiffs assert that the following four bases support an inference of scienter: (1)

17   confidential witness testimony of scienter; (2) Defendants shirked their oversight duties

18   and ignored red flags regarding material weaknesses in internal controls; (3) Defendants

19   each had access to information revealing material weaknesses in Costco's internal

20   controls yet did nothing; and (4) Defendants' remedial measures to correct material

21   weaknesses in internal controls. The Court addresses each basis.

22

23

### i.    Plaintiffs' confidential witness testimony

Plaintiffs contend that the testimony of CWs 1, 6, and 8[11] provides evidence sufficient to raise a strong inference of scienter.   The new testimony in the Second Amended Complaint suffers from the same deficiencies as the previous complaint. Courts use a two-part test to determine if the alleged CW testimony supports scienter. First, the court determines whether the complaint describes each CW with "sufficient particularity to establish their reliability and personal knowledge." *Zucco Partners, LLC*, 552 F.3d at 995. Second, the CWs' statements "must themselves be indicative of scienter." *Id.*

Plaintiffs describe CWs 1, 6, and 8 with sufficient particularity to establish their personal knowledge as to their allegations regarding the state of the IT department (*see, e.g.* SAC ¶¶ 32, 37, 39 (describing CWs' job titles, tenure, and role in Costco's IT department)).  Plaintiffs do not indicate, however, that CWs 1, 6, and 8 have reliable personal knowledge regarding what either Defendant Galanti or Jelinek knew regarding the material weakness in internal controls on June 6, 2018, when the alleged false statements were made.

---

[11] Because Plaintiffs have not supplemented the testimony of CWs 2-5 and 7, the Court does not reanalyze the reliability of that testimony in this Order.  The Court therefore still gives little weight to the testimony of CWs 2 and 4.  Order, docket no. 37 at 19-20.  The Court found that CW 2's and 4's statements were vague and inconsistent.  *Id.* at 12-15.  It is also still not clear whether CW 2 worked at Costco during the Class Period.  The Court again lends no weight to the testimony of CW 3, who Plaintiffs still do not allege worked at Costco during the Class Period.  The Court found that Plaintiffs described CWs 5 and 7 with sufficient particularity to establish their personal knowledge regarding the material weakness in Costco's internal controls.  The parties stipulate that the existence of a material weakness is not at issue in this Motion.

1   As the Court previously found, CW 1 acquired his information through multiple

2   degrees of separation, was part of the GDPR compliance, not financial controls section of

3   the IT department, and had no way of verifying his beliefs regarding what Defendants

4   Jelinek and Galanti knew at the time.  Order, docket no. 37 at 38-40.  None of the

5   additional CW 1 allegations in the Second Amended Complaint remedy this deficiency.

6   The only new allegation that connects the alleged material weakness in internal controls

7   with what the individual Defendants knew is CW 1's allegation that Defendant Jelinek

8   sent 4-5 companywide emails directing everyone to "do better at being SOX compliant."

9   SAC ¶¶ 12, 159, 268.  Such a broad, companywide directive does not indicate Defendant

10  Jelinek's knowledge of a material weakness related to IT controls.  CW 1's assertions

11  that Defendant Jelinek failed to follow up or "gave up" on compliance are also purely

12  conclusory, not based on any personal knowledge, and are not sufficiently particularized

13  to support a "strong inference" of intent to deceive, manipulate, or defraud as is required

14  under the PSLRA.  15 U.S.C. § 78u-4(b)(2)(A).

15  CW 6 heard about and witnessed others discussing what Defendant Jelinek said

16  about the state of the IT department.  CW 6 also discussed Galanti's reaction to an IT

17  employee survey.  The Court found these allegations insufficient to show personal

18  knowledge of Defendants' scienter.  Order, docket no. 37 at 40.  The additional CW 6

19  allegations in the Second Amended Complaint relate to an internal risk registry that was

20  disbanded.  SAC ¶ 151.  Plaintiffs fail to explain how those additional allegations remedy

21  the previous deficiencies with CW 6's lack of personal knowledge regarding Defendants'

22

23

1    scienter.  *Zucco Partners, LLC*, 552 F.3d at 995; *Police Ret. Sys. v. Intuitive Surgical,*

2    *Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014).

3           Plaintiffs similarly do not allege that CW 8—the only new confidential witness—

4    had any direct contact with or reliable personal knowledge regarding what Defendants

5    Galanti and Jelinek knew at the time.  CW 8's allegations regarding what an unnamed

6    "IT director" told him about the IT budget (SAC ¶ 184), his "assumption" that Costco's

7    board discussed change management (*id.* at ¶ 201), and that Defendant Jelinek ultimately

8    approved of what he believed was an underfunded IT budget (*id.* at ¶¶ 124-25, 190), are

9    not grounded in CW 8's personal knowledge about what Defendants knew.  Therefore,

10   while each of the CWs may be qualified to offer general testimony regarding the state of

11   the IT department (*id.* at ¶¶ 124-26, 190), general user access and change management

12   issues (*id.* at ¶¶ 163-66), the existence of IT risk management teams and systems (*id.* at

13   ¶¶ 150-51), or the failure to remedy certain user administration issues in 2014-2015 (*id.*

14   at ¶¶ 182-85, 203), no CW contends that Defendants Jelinek and Galanti knew but

15   disregarded such information.[12]

16          On their own, the Court concludes that each of Plaintiffs' individual CWs do not

17   allege sufficient facts to support a claim of scienter. Similarly, considered holistically, the

18

19   _____

20   [12] Indeed, Plaintiffs' contentions are to the contrary because they state that the buck stopped with middle management.  *See* SAC ¶¶ 126, 159, 206 (placing blame for IT department issues on VPs and "middle

21   management").  Also, to the extent Plaintiffs revitalize the argument that Costco intentionally defunded its IT department, the Court previously rejected that argument due in part to the contradictory allegations in the complaint.  Order, docket no. 37 at 30 n.8.  Moreover, the Court places little weight on new

22   allegations from CW 8 regarding the state of Costco's IT department funding because it is unclear how a lower level architectural employee in the IT department would have any reliable personal knowledge regarding the adequacy of department funding.

23

1   facts alleged by the CWs are also insufficient to allege scienter.  *Webb v. SolarCity*

2   *Corp.*, 884 F.3d 844, 855 (9th Cir. 2018).[13]

3           **ii.   Plaintiffs' theory that Defendants shirked their oversight duties and ignored red flags regarding material weaknesses in Costco's**

4                   **internal controls**

5        The bulk of Plaintiffs' remaining new allegations amount to contentions that

6   Defendants Jelinek and Galanti possessed the requisite scienter because they had a duty

7   to know about and remedy various "red flags" in internal controls yet did not do so.[14]

8   Plaintiffs' Opposition, docket no. 45 at 3-4.  The new allegations in support of this

9   argument include that Costco's e-commerce expansion put "additional strain" on

10  Costco's already underfunded and understaffed IT department (SAC ¶¶ 2, 7, 13, 57–58,

11  134, 269) and that Costco settled claims and was developing a system of internal controls

12  and procedures related to a variety of areas including opioid prescriptions, embezzlement,

13  and product safety (*id.* at ¶¶ 10, 112–17, 261–63).  Plaintiffs also allege that an IT

14  department risk management group that could have helped identify IT security threats

15  was disbanded due to poor management.  *Id.* at ¶¶ 148, 150-51.

16

17

---

18  [13] Plaintiffs contend that a CW's lack of personal knowledge of a defendant's state of mind, reliance on

19  hearsay, lack of contact with a defendant, several degrees of separation from a defendant, or employment solely outside the class period is not always fatal.  Plaintiffs' Opposition to Motion to Dismiss, docket no.

20  45 at 14-18.  While it may be possible to show an inference of scienter even despite any one of those deficiencies, Plaintiffs have not done so here.  None of the CWs support a strong inference of scienter

21  because their testimony does not show that Defendants Jelinek and Galanti made the alleged misrepresentations with intentional recklessness. *WPP Luxembourg Gamma Three Sarl*, 655 F.3d at 1051, *abrogated on other grounds by Lorenzo v. SEC*, 139 S. Ct. 1094 (2019).

22  [14] Plaintiffs contend that Defendants "consciously deprived" the IT department of funding.  Plaintiffs'

23  Opposition, docket no. 45 at 20-21 (citing SAC ¶¶ 121-59).  None of the allegations, however, in the cited paragraphs of the Second Amended Complaint, support an inference of Defendants' conscious intent.

1        These new allegations are unrelated to user control issues as they relate to

2  financial reporting.  Even assuming allegations that Defendants breached some oversight

3  duty[15] set forth in the COSO framework, Section 10(b) and Rule 10b-5 do not protect

4  investors from mismanagement.  Negligence alone is not sufficient to support a strong

5  inference of scienter.  *See*, *e.g.*, *Merck & Co. v. Reynolds*, 559 U.S. 633, 648-49 (2010)

6  (heightened standards for pleading scienter not satisfied where inference is defendant

7  acted "innocently or negligently").  Section 10(b) and Rule 10b-5 also do not protect

8  investors from fraud by hindsight.  *In re Metawave Commc'ns Corp. Sec. Litig.*, 629 F.

9  Supp. 2d 1207, 1219 (W.D. Wash. 2009) (quoting *Ronconi v. Larkin*, 253 F.3d 423, 430

10  n.12 (9th Cir. 2001).  Moreover, any contention that senior IT management's decision to

11  disband the IT risk management group adequately alleges corporate scienter because IT

12  management could have corrected the alleged misrepresentations misconstrues the

13  general rule that scienter be pled with respect to the individuals who actually made the

14  false statements.  *See supra* footnote 10; *Glazer Capital Mgmt. v. Magistri*, 549 F.3d 736,

15  745 (9th Cir. 2008).

16

17

18

---

19  [15] Plaintiffs cite Costco's COSO framework, which details Defendants' required oversight activities for SOX.  SAC ¶¶ 251-254.  Instead of Plaintiffs' intended effect of revealing a breach of these duties,

20  however, Plaintiffs' citation to this list of activities is a checklist of the deficiencies in Plaintiffs' Second Amended Complaint.  Plaintiffs do not allege with particularity that Defendants failed to perform the list of required oversight activities.  In fact, some of Plaintiffs' allegations appear to *support* Defendants'

21  compliance with the COSO framework's oversight requirements.  For example, the only new allegation in the Second Amended Complaint that specifically refers to an action by an individual Defendant is the email from Defendant Jelinek that stresses the importance of SOX compliance and internal controls.  This

22  email is evidence of Defendant Jelinek's good faith compliance with the COSO framework's oversight requirement that he "communicate direction and 'tone at the top.'"  SAC ¶¶ 159, 252.

23

### iii.   Plaintiffs' theory that Defendants each had access to information revealing material weaknesses in Costco's internal controls yet did nothing

Plaintiffs again allege that Defendants' ability to access information showing a material weakness is sufficient to support a finding of scienter.  This Court has already rejected Plaintiffs' core operations argument.  Plaintiffs must either allege that Defendants _personally_ accessed the information showing a material weakness in internal controls, Order, docket no. 37 at 41-42 (citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620 (9th Cir. 2017)), or that the falsity of the information was so "patently obvious" that it would be "absurd" to suggest that top management was unaware of them.  Order, docket no. 37 at 42 (citing *Zucco Partners, LLC*, 552 F.3d at 1001 (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989 (9th Cir. 2008)).  Hypothetical access or ability to access information, as Plaintiffs allege here, is not enough to satisfy scienter pleading requirements.  *See, e.g.*, *Police Ret. Sys.*, 759 F.3d at 1062 ("Mere access to reports containing undisclosed [] data is insufficient to establish a strong inference of scienter"); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (rejecting "conclusory" allegation that defendants had "access to" information).

Moreover, to the extent Plaintiffs contend that the Court should infer scienter as to Costco and the individual defendants by pleading scienter as to other corporate executives, that contention again relies on a scienter standard that is not the rule in this circuit.  *See supra* footnote 10; *Glazer Capital Mgmt.*, 549 F.3d at 745 (9th Cir. 2008).

### iv.   Plaintiffs' theory that Costco's remedial measures are evidence of scienter

Plaintiffs also repeat the argument that the remedial measures Defendants undertook after disclosing the material weakness are themselves evidence of scienter. SAC ¶ 279-80.  As the Court previously found, a company's decision to enhance financial controls does not, on its own, show that Defendants knew about the extent of any previous material weakness.  Order, docket no. 37 at 43 (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1553 (9th Cir. 1994) ("The fact that policies may change over time does not mean that an earlier policy was inadequate, or that statements regarding its adequacy were falsehoods.")).  The Court again must conclude that the remedial measures Defendants undertook after disclosing the material weakness—either alone or in conjunction with other allegations—are not evidence of Defendants' scienter.

### C.  More Plausible Inference

In determining whether a defendant acted with scienter, a court considers "competing inferences" and "plausible, non-culpable explanations." *Tellabs, Inc.*, 551 U.S. at 323-24. A complaint survives only if the culpable inference is "at least as compelling" as the nonculpable inference.  *Id.* at 324.

As before, the more plausible inference is that Defendants Jelinek and Galanti were unaware of any material weakness when they worked to prepare the quarterly report in June 2018 but became aware when they undertook the more labor-intensive task of preparing the annual report.  Order, docket no. 37 at 45.  Plaintiffs do not offer any explanation for why Defendants would have concealed a weakness in June 2018 only to disclose it a few months later, other than to state that Defendants should not be

1   "rewarded" for a belated discovery of a material weakness.  Indeed, Plaintiffs do not

2   allege that Defendants profited from the alleged fraud or were otherwise motivated to

3   conceal information that they would later reveal.

4          The Court therefore concludes that none of Plaintiffs' allegations "standing alone,

5   are sufficient to create a strong inference of scienter."  *N.M. State Inv. Council*, 641 F.3d

6   at 1095.  Even considering all of Plaintiffs' new allegations in <u>*combination*</u> with the

7   allegations in the Second Amended Complaint, Plaintiffs at most paint a picture of

8   mismanagement—not a strong inference of scienter.  *Webb*, 884 F.3d at 855.

9          **D. Dismissal with Prejudice**[16]

10         If the Court dismisses the complaint or portions thereof, it must consider whether

11  to grant leave to amend.  *Lopez*, 203 F.3d at 1130.  Plaintiffs have had four opportunities

12  to allege facts in support of their claims.  *Supra* footnote 3.  Most recently, despite the

13  Court's previous Order identifying the specific deficiencies, Plaintiffs have again failed

14  to plead particularized allegations of fact supporting a strong inference of scienter.  This

15  latest attempt scrapes the proverbial bottom of the barrel, as Plaintiffs' additional

16  allegations contain little to no direct knowledge about the alleged misrepresentations

17  contained in statements 1-3 as set forth in the Second Amended Complaint.  This

18  demonstrates that further leave to amend would be futile.  *Lipton*, 284 F.3d at 1039.

19  Plaintiffs also fail to explain whether any additional amendment could cure these

20  deficiencies.  The Court therefore dismisses the Second Amended Complaint with

21  prejudice and without leave to amend.

22  _____

23  [16] Plaintiffs' Section 20(a) claim fails with the Section 10(b) claim.  *See Lipton*, 284 F.3d at 1035 n.15.

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1)     Defendants' Motion to Dismiss, docket no. 44, is GRANTED.  Plaintiffs' Second Amended Complaint is DISMISSED with prejudice.

(2)     The Clerk is directed to send a copy of this Order to all counsel of record, enter a judgment consistent with this Order, and CLOSE the case.

IT IS SO ORDERED.

Dated this 19th day of August, 2020.

Thomas S. Zilly
United States District Judge